IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

NOVEMBER 1997 SESSION



FILED

April 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,                )
                                   )
              APPELLEE,            )
                                   )        No. 03-C-01-9610-CR-00361
                                   )
                                   )        Sullivan County
v.                                 )
                                   )        Frank L. Slaughter, Judge
                                   )
                                   )        (Aggravated Rape)
BENJAMIN F. DISHMAN,               )
                                   )
              APPELLANT.           )


FOR THE APPELLANT:                          FOR THE APPELLEE:

Leslie S. Hale                              John Knox Walkup
Assistant Public Defender                   Attorney General & Reporter
P.O. Box 839                                425 Fifth Avenue, North
Blountville, TN 37617                       Nashville, TN 37243-0497

OF COUNSEL:                                 Peter M. Coughlan
                                            Assistant Attorney General
Stephen M. Wallace                          450 James Robertson Parkway
District Public Defender                    Nashville, TN 37243-0493
P.O. Box 839
Blountville, TN 37617                       H. Greeley Wells, Jr.
                                            District Attorney General
                                            P.O. Box 526
                                            Blountville, TN 37617-0526

                                            Teresa K. Murray-Smith
                                            Assistant District Attorney General
                                            P.O. Box 526
                                            Blountville, TN 37617-0526

                                            Barry P. Staubus
                                            Assistant District Attorney General
                                            P.O. Box 526
                                            Blountville, TN 37617-0526


OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Benjamin F. Dishman (defendant), was convicted of aggravated rape, a Class A felony, by a jury of his peers. The trial court found the defendant was a multiple offender and imposed a Range II sentence consisting of confinement for forty (40) years in the Department of Correction. In this court, the defendant presents six basic issues for review. He contends (1) the indictment is defective because it fails to allege the mens rea required to commit aggravated rape, (2) the evidence is insufficient, as a matter of law, to support his conviction, (3) the trial court erred by not requiring the state to elect the offense it would prosecute, (4) the trial court erred by refusing to instruct the jury on the defenses of voluntary intoxication and ignorance or mistake of fact, (5) the trial court erred by instructing the jury regarding the elements of aggravated rape and lesser included offenses, and (6) the trial court erred by limiting his cross-examination of the victim. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

The victim was a member of a church ministry which counseled prison inmates. She met the defendant when he was confined by the Department of Correction. She visited him in prison, talked to him on the telephone, and wrote to him. When the defendant was having problems regarding his parole, the victim took steps to assist him. Subsequently, the defendant was released, and he lived temporarily in the victim's residence.

The victim, fifty-one years of age and the mother of a teenager, lived in Bristol, Tennessee. She planned to attend a Thanksgiving program and dinner at her church on the evening of November 18, 1995. The defendant called and asked the victim to come to his residence in Johnson City because he wanted to talk to her. They discussed the Thanksgiving card the victim had sent to the defendant. However, she refused to meet the defendant in Johnson City because she wanted to attend the Thanksgiving dinner at the church.

The defendant, who had a motor vehicle, drove to the victim's residence. He

entered the victim's residence with a cup filled with an alcoholic beverage. The victim did not allow anyone to drink alcoholic beverages in her residence. She took the cup and put it in the kitchen. The victim testified the defendant was not intoxicated while he was inside her residence.

While the victim was sitting at a table in her kitchen, the defendant grabbed her throat and pulled her out of the chair. He then grabbed her by the hair. He "steered" the victim down a hallway leading to her bedroom. When they arrived in the bedroom, the defendant threw the victim on the bed. He then stated: "You bitch, take your clothes off." The victim testified she was terrified. She was afraid of the defendant due to his mannerisms and the way he was acting. She removed her clothing.

The victim was lying on the bed. The defendant unzipped his pants and got on top of the victim. He penetrated her vagina with his reproductive organ. Subsequently, he grabbed the victim by the hair and required her to perform fellatio upon him. Finally, he made the victim get on her hands and knees and he penetrated the victim's vagina with his reproductive organ from behind her.

The defendant turned the victim on her back and straddled her chest. He asked her: "Bitch, where's your money?" She did not have any money in her residence. The defendant struck the victim on her face three or four times with his fist. The defendant subsequently left the residence.

The victim testified she was "knocked out" after being struck by the defendant. She felt she was near death. Her eyes were not focusing. She stated that "my eyeballs wanted to go up in my eyes, in my head." She sustained bruises and had knots on her head. The bridges between her teeth were loosened, and she had sores in her mouth. She could not work for two months. She began having nightmares following the events in question. A doctor testified the victim had "[t]ears or injuries that are readily apparent to the naked eye" at the opening of the vagina. The doctor also found an irritation or inflammation of the tissues inside her vagina. He opined this was consistent with recent sexual activity.

A police officer observed the defendant walking along the shoulder of a roadway in Kingsport. The defendant was staggering into a lane of traffic. The officer stopped and talked to the defendant. According to the officer, the defendant told him he had been to

3

see his girlfriend in Bristol, and was going to Johnson City. While it was quite cold outside, the defendant was not wearing a coat. He had an odor of an intoxicating beverage on his breath. The defendant admitted he had consumed four drinks of an alcoholic beverage at a friend's house in Bristol. He had been walking three and one-half hours. The officer arrested the defendant for public drunkenness and transported him to the Kingsport City Jail.

While at the jail, the officer observed the defendant had a scratch under his right eye and a scratch on his hand in the area of his knuckles. When the defendant's shoes were removed, there were several long hairs "stringing" from his socks and shoes.

## I.

The defendant contends the indictment in this case is fatally defective because it fails to allege the mens rea, an essential element of aggravated rape. He argues this defect had the effect of "depriving the trial court of jurisdiction and rendering the appellant's conviction void." The defendant predicates his argument upon this court's opinion in State v. Roger Dale Hill, Sr.,Wayne County No. 01-C-01-9508-CC-00267, 1996 WL 346941 (Tenn. Crim. App., Nashville, June 20, 1996), and other opinions of this court. The State of Tennessee contends the indictment is valid.

The indictment charges the offense of aggravated rape. It alleges the defendant "on or about November 18, 1995 in the State and County aforesaid and before the finding of this Indictment did unlawfully, feloniously, and by force sexually penetrate [the victim] and did cause [the victim] bodily injury by striking her about the head and face. . . ."

The supreme court resolved this issue in State v. Hill, 954 S.W.2d 725 (Tenn. 1997). The court said in ruling:

> We hold that for offenses which neither expressly require nor plainly dispense with the requirement for a culpable mental state, an indictment which fails to allege such mental state will be sufficient to support prosecution and conviction for that offense so long as:
>
> (1) the language of the indictment is sufficient to meet the constitutional requirement of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from

4

double jeopardy;

(2) the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and

(3) the mental state can be logically inferred from the conduct alleged.

954 S.W.2d at 726-27.

The indictment in this case, like the indictment for aggravated rape in <u>Hill</u>, meets the aforementioned criteria. A defendant who sexually penetrates a victim by force and inflicts bodily injury to the victim must necessarily act intentionally, knowingly, or recklessly. <u>Hill</u>, 954 S.W.2d at 729

This issue is without merit.

## II.

The defendant contends the evidence is insufficient, as a matter of law, to support his conviction for aggravated rape. He argues (a) the State of Tennessee failed to prove "bodily injury was inflicted to accomplish the [requisite] rape," and (b) he did not possess the required <u>mens rea</u> to commit the offense.

## A.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Dykes</u>, 803 S.W.2d 250, 253 (Tenn. Crim. App.), <u>per. app. denied</u> (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this court does not reweigh or reevaluate the evidence. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App.), <u>per. app. denied</u> (Tenn. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. <u>Liakas v. State</u>, 199 Tenn. 298, 305, 286

S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

**B.**

In the context of this case, the State of Tennessee was required to prove the following elements to establish the offense of aggravated rape beyond a reasonable doubt: (a) the defendant unlawfully sexually penetrated the victim and (b) the defendant caused bodily injury to the victim. Tenn. Code Ann. § 39-13-502(a)(2). The State of Tennessee proved these elements of aggravated rape beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1970).

The defendant cites State v. Smith, 891 S.W.2d 922, 928 (Tenn. Crim. App.), per. app. denied (Tenn. 1994) and State v. Jackson, 670 S.W.2d 634 (Tenn. Crim. App.), per. app. denied (Tenn. 1984), to support his theory that the infliction of bodily injury is only an

6

element of the offense of aggravated rape when the infliction of bodily injury precedes or accompanies the penetration. The defendant's reliance on these cases is misplaced. Neither case addresses the theory he advances in this case. Nor does the statute support this theory.

The statute uses the term "accompanied." It does not state when the "bodily injury" must be inflicted. In other words, the statute does not state the "bodily injury" must be inflicted to accomplish the act of penetration. Thus, this court must construe the statute to determine the intent of the legislature when enacting this statute.

**(1)**

The polestar of statutory construction is the intent of the legislature when enacting a statute. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). Thus, a court's role in the interpretation of a statute is to "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens, 908 S.W.2d at 926; see Hicks v. State, 945 S.W.2d 706, 707 (Tenn. 1997); State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997); State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1995). The common law rules of construction developed through the years are aids which assist a court in making this determination. Roberson v. University of Tennessee, 912 S.W.2d 746, 747 (Tenn. Ct. App.), per. app. denied (Tenn. 1995).

The intent of the legislature is to be derived from the face of the statute if the verbiage contained within the four corners of the statute is plain, clear, and unambiguous. Austin v. Memphis Publ'g. Co., 655 S.W.2d 146, 149 (Tenn. 1983). In other words, "[u]nambiguous statutes must be construed to mean what they say." Roberson, 912 S.W.2d at 747.

**(2)**

This court is of the opinion the language used by the General Assembly in proscribing the offense of aggravated rape is clear and unambiguous. The intent of the General Assembly can readily be determined by a reading of the statute.

The statute in question, Tenn. Code Ann. § 39-13-502, provides in part:

> (a) Aggravated rape is <u>unlawful sexual penetration</u> of a victim by the defendant or the defendant by a victim <u>accompanied</u> by any of the following circumstances:
>
> (1) Force or coercion is <u>used to accomplish the act</u> and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;
>
> (2) The defendant causes bodily injury to the victim; . . .
> (Emphasis added).

As can be seen from a reading of this statute, the Tennessee General Assembly made a clear distinction between Tenn. Code Ann. § 39-13-502(a)(1) and (a)(2). Section 39-13-502(a)(1) requires the use of force or coercion to be asserted in order to "accomplish the act" of sexual penetration before the crime of rape can be elevated to aggravated rape. Section 39-13-502(a)(2) does not provide that the bodily injury must be inflicted to "accomplish the act" of sexual penetration.

It was the intent of the General Assembly to place a restraint upon the infliction of injury to a rape victim to protect the victim. The restraint is in the form of an elevation of the crime of rape to aggravated rape if the perpetrator inflicts "bodily injury" as this phrase is defined by statute. If the General Assembly had intended to limit the application of this section to bodily injury inflicted before or during the sexual penetration, the General Assembly would have inserted the same phrase it inserted in § 39-13-502(a)(1), namely, to "accomplish the act" of sexual penetration.

**(3)**

This court decided this very issue in <u>State v. Locke</u>, 771 S.W.2d 132, 136 (Tenn. Crim. App. 1988), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1989). In <u>Locke</u> the defendant was able to enter the victim's second story apartment during the early morning hours without awakening the victim. He penetrated the victim on two or three occasions. The victim subsequently hit Locke, and he left through a door. When the victim went to a window, she saw Locke and began screaming loudly. Locke threw a full beer can at the window. He then charged the window and attempted to open it. The victim ran into her bedroom, slipped into a pair of

8

jeans and a top, exited through a window onto the roof, and jumped to the ground. As a result, she suffered severe debilitating injuries to her spine and large toe. The defendant vigorously contended the State of Tennessee failed to establish he caused personal injuries to the victim within the meaning of the statute. He argued the "personal injuries" must be caused or inflicted for the purpose of making the victim submit to the unlawful penetration or while the accused sexually penetrated the victim. This court ruled the injuries sustained by the victim when she jumped from the roof were properly used to elevate the rape to aggravated rape. In ruling, this court said:

> Whether the serious, debilitating injuries sustained by the victim to her spine and large toe can be said to have "accompanied" the unlawful sexual penetration of the victim is a question of considerable complexity. This issue turns upon the meaning of the term "accompanied" as used in . . . the applicable statute . . . .
>
> The word "accompany" encompasses acts or circumstances which occur before, during and after the consummation of the unlawful sexual penetration. In Balentine's Law Dictionary (3d ed. 1979), it is said the word "accompany," as used in a statute, does not necessarily mean "simultaneous," but may mean "in relation to, connected with," or "to follow." See Tucker v. Kerner, 186 F.2d 79, 82 (7th Cir. 1950). Black's Law Dictionary (5th ed. 1979), referring to Webster's Dictionary, defines the word "accompany" as "[t]o occur in association with." See United States v. Lee, 131 F.2d 464 (7th Cir. 1942).

771 S.W.2d at 136.

In this case, the defendant penetrated the victim three times in rapid succession, and, immediately after the third penetration, commenced to beat her unmercifully. It was clearly the intent of the General Assembly to elevate the offense of rape to aggravated rape based upon the facts of this case. The bodily injury "accompanied" the rape. The bodily injury was not, as the defendant urges, required to be inflicted before or during the sexual penetration.

This issue is without merit.


## III.


The defendant contends the trial court committed error of prejudicial dimensions by refusing to require the State of Tennessee to elect which penetration it would prosecute.

9

The defendant argues he was charged with one count of aggravated rape, but the state established three separate penetrations of the victim. The State of Tennessee contends it was not required to make an election in this case. The state argues all three acts of penetration occurred in succession at the same exact location, and, therefore, constituted but a single act of aggravated rape.

As a general rule, the trial court is required to make the State of Tennessee elect the offense it will prosecute when the defendant is charged with one count of aggravated rape and the evidence establishes two or more acts which could constitute aggravated rape. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993); Burlison, 501 S.W.2d 801, 804 (Tenn. 1973); State v. Clabo, 905 S.W.2d 197, 204 (Tenn. Crim. App.), per. app. denied (Tenn. 1995); State v. Hallock, 875 S.W.2d 285, 292-93 (Tenn. Crim. App. 1993), per. app. denied (Tenn. 1994); State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991). The purpose of the election is to ensure the jury's verdict is unanimous for the same criminal act. If this rule did not exist, the jurors could vote to convict the defendant, but their verdict might not be unanimous for the same criminal conduct. Individual jurors could vote to convict the defendant based upon separate and distinct acts of criminal conduct.

In this case, there were three separate acts of penetration. The victim testified the defendant vaginally penetrated her while she lay in the bed on her back. When the defendant lost his erection, he forced the victim to perform fellatio upon him until his reproductive organ was erect. He then forced the victim to get on her hands and knees. He again vaginally penetrated her from behind her. The record establishes these three acts of penetration occurred in rapid succession. Only seconds separated the three penetrations. Thus, the record supports the conviction of only one aggravated rape conviction.

In State v. Dan Anderson, Sullivan County No. 929, 1991 WL 42427 (Tenn. Crim. App., Knoxville, April 1, 1991), Anderson was charged and convicted of one count of aggravated rape. The evidence established Anderson forced the victim to have both vaginal and anal intercourse, and perform fellatio upon him. Later, Anderson filed a post-conviction action. Dan Anderson v. State, Sullivan County No. 03-C-01-9409-CR-00332, 1995 WL 676395 (Tenn. Crim. App., Knoxville, November 15, 1995). In the post-

10

conviction action, Anderson contended in part that trial counsel was ineffective because counsel failed to require the State of Tennessee to elect which penetration it would prosecute and seek a conviction. This court held counsel was not ineffective because the evidence would only support one conviction. In ruling, this court said:

> In the case sub judice the appellant was charged in a single count with one offense of aggravated rape. The record before us supports the commission of but one offense. Indeed, at the post-conviction hearing, during opening remarks by appellant's counsel, the trial judge stated: "It's all essentially one transaction . . . It's not a situation where he could have been convicted of three separate offenses of aggravated rape at that point. It was all essentially one occurrence." At the conclusion of the hearing, the judge again observed that the three instances of penetration in this case were "all part of the same general transaction." Thus, a non-unanimous jury verdict based upon unindicted conduct was not possible.
>
> * * * *
>
> [T]he record supports a conclusion that the penetrations occurred during a single episode of intercourse and were motivated by a single basic intent. Thus, the risk of a non-unanimous jury verdict did not exist, and we cannot conclude that trial counsel's failure to require an election of offenses was deficient representation.

Slip op. at 6-7.

In State v. James Monroe Bost, Davidson County No. 01-C-01-9112-CR-00373, 1992 WL 213374 (Tenn. Crim. App., Nashville, September 3, 1992), Bost was convicted of aggravated rape, aggravated sexual battery, especially aggravated robbery, and aggravated robbery. The evidence established the defendant raped the victim after he had committed the burglary and robbed the victim. He subsequently raised the victim's nightshirt and fondled her breasts. On appeal, Bost contended he could not be convicted of both aggravated rape and aggravated sexual battery because "the lifting of the victim's nightshirt and fondling her breasts 'arose out of the same transaction' as the vaginal penetration, and therefore demonstrated the same criminal intent." This court, finding the evidence did not support convictions for both aggravated rape and aggravated sexual battery, said:

> We must agree with the appellant's reasoning. The facts in this record do not support separate convictions. The fondling occurred concomitantly with the vaginal rape, and the evidence here shows it to have been part and parcel of the bestial act.

11

> . . . Accordingly, the conviction for aggravated sexual battery is reversed and dismissed. However, as the evidence amply supports the aggravated rape conviction, there is no need to order a remand for a new trial on that count.

Slip op. at 3-4. See State v. Locke, supra.

In this case, the three penetrations occurred in the same bedroom, were part of one continuous course of conduct, and they occurred in rapid succession. Consequently, the evidence in this case would only support one conviction. In short, the trial court did not abuse its discretion by refusing to require the State of Tennessee to elect the offense it would prosecute and seek a conviction.

This issue is without merit.

## IV.

The defendant next contends the trial court erred in failing to instruct the jury on the general defenses of voluntary intoxication and mistake of fact. The defendant concedes he did not request general defense instructions at trial. The issue was not raised until the motion for new trial. Since intoxication and mistake of fact are general defenses that do not require notice to the state, the defendant argues the trial court's failure to instruct the jury on defenses fairly raised by the proof constituted fundamental error.[1]

---

[1]The cases cited by the defendant do not support the proposition that the trial court's failure to instruct on voluntary intoxication constituted fundamental error. In fact, State v. Norris, 874 S.W.2d 590, 600 (Tenn. Crim. App.), per. app. denied (Tenn. 1993), cited by the defendant, reaches the opposite result. Id. In Norris, this court concluded it was not plain error for a trial court to omit an instruction if the defendant failed to object or make a special request for the instruction. Id. State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975), also cited by the defendant, is not relevant to the present case. In Thompson, the supreme court concluded the failure of a trial court to instruct on the law of circumstantial evidence constituted fundamental error when all the evidence presented was circumstantial. The court also stated the failure to instruct on circumstantial evidence did not constitute reversible error if both direct and circumstantial evidence were presented at trial. Id. Even by analogy, this holding does not support the proposition that the trial court committed fundamental error; voluntary intoxication was merely one of many theories asserted by the defendant.

**A.**

It is the duty of the trial court, without request, to instruct the jury on the rules of law governing every issue raised by the evidence. See Poe v. State, 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (1963); State v. Locke, 771 S.W.2d 132, 138-39 (Tenn. Crim. App. 1988), per. app. denied (Tenn. 1989). An accused's right to a full exposition of the law applicable to the facts extends to the accused's theory of defense. Poe, 212 Tenn. at 414-20, 370 S.W.2d at 491; Davis v. State, 64 Tenn. 612 (1875). However, before an accused is entitled to an instruction on a theory of defense, the defense must be "fairly raised" by the evidence adduced at trial. Poe, 212 Tenn. at 416, 370 S.W.2d at 489. See State v. Hardin, 691 S.W.2d 578, 581 (Tenn. Crim. App. 1985) (alibi defense not fairly raised by the evidence); State v. Mathias, 687 S.W.2d 296, 298 (Tenn. Crim. App.), per. app. denied (Tenn. 1985) (entrapment defense not fairly raised by the evidence); State v. Chambless, 682 S.W.2d 227, 231-32 (Tenn. Crim. App.), per. app. denied (Tenn. 1984) (temporary insanity defense not fairly raised by the evidence); Harrell v. State, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979), per. app. denied (Tenn. 1980) (voluntary intoxication not fairly raised by the evidence). The question which this court must resolve is whether the evidence contained in the record "fairly raises" the defenses of voluntary intoxication and mistake of fact.

**B.**

The defendant contends he did not possess the mens rea to commit the offense of aggravated rape because he was highly intoxicated at the time he penetrated the victim. In support of this argument, the defendant points to the fact he was drinking an alcoholic beverage when he entered the victim's residence. He also points to the testimony of Officer Sean Chambers of the Kingsport Police Department who arrested the defendant for public drunkenness approximately three and one-half hours after he left the victim's residence. The victim testified the defendant brought an alcoholic beverage into her residence and she took the beverage away from him. She did not allow anyone to drink alcoholic beverages in her residence. However, she testified the defendant was not

13

intoxicated while he was in her residence.

Whether or not the defense of intoxication is available to this defendant depends on whether the defendant was intoxicated at the time he committed the rape. The only evidence in the record regarding whether the defendant was intoxicated at the time of the rape was the testimony of the victim that the defendant arrived at her home with a drink in his hand, but that he was not intoxicated. The defense of intoxication was not fairly raised by the proof.

The record reflects the defendant was able to converse with the victim on the telephone without difficulty before visiting her home. He was apparently coherent. The defendant drove to the victim's home. The victim did not describe any act or conduct which led her to believe the defendant was intoxicated or which supports the defendant's argument that he did not possess the requisite mens rea to commit the offense of aggravated rape. The victim knew the defendant well, and had seen him both sober and intoxicated on prior occasions. There is no evidence in the record to contradict the victim's assertion that the defendant was not intoxicated at the time the rape took place.

Although a police officer testified the defendant appeared intoxicated when he observed the defendant on the side of a road in Kingsport, the officer did not encounter the defendant until three and one-half hours after the commission of the rape. The defendant could have consumed additional alcoholic beverages between the time he left the victim's residence and the time he was arrested in Kingsport.

This issue has no merit.

## C.

The defendant also contends the evidence establishes the victim gave the defendant the impression she wanted to be intimate with him, and he believed the victim was consenting to the sexual activities that took place on the date in question. He therefore argues he was acting upon a mistake of fact. Tenn. Code Ann. § 39-11-502.

The defense of mistake of fact was not fairly raised by the evidence. The victim was fifty-one years of age; the defendant was thirty-one years of age. While the victim said she loved the defendant as if he was her child, she did not want to be intimate with him. Nor

14

did she want him to be a lover. Her only motivation in assisting the defendant was to give him a second chance after his release from the Department of Correction. She provided him with a place to live for a few days following his release. She fed him. She helped him obtain forms of identification. She provided him with money to visit his family. Moreover, the defendant was married when this occurred. There is no evidence in the record establishing the defendant and the victim had anything more than a platonic friendship.

On November 18, 1995, the defendant grabbed the victim by her throat and pulled her out of her chair. He grabbed her by the hair and "steered" her down a hallway to her bedroom. He stated: "You bitch, take your clothes off." The defendant penetrated the victim's vagina, grabbed the victim by the hair and forced her to perform fellatio on him. He then made the victim get on her hands and knees so he could penetrate her from behind. The defendant then proceeded to straddle the victim's chest and struck her three to four times in the face. The defendant did not testify. Thus, there is no credible view of the evidence which supports a mistake of fact defense; furthermore, the defendant failed to request a mistake of fact instruction. The trial court did not err by failing to instruct the jury on mistake of fact. State v. McPherson, 882 S.W.2d 365 (Tenn. Crim. App.), per. app. denied (Tenn. 1994).

The defendant cites Jones v. State, 889 S.W.2d 225 (Tenn.), per. app. denied (Tenn. 1994), for the proposition that mistake of fact was a viable defense to the charge of aggravated rape in the present case. In Jones, there was sufficient evidence in the record to support a finding that the defendant had been mistaken regarding the victim's age. The victim's age was not an aggravating factor in the present case; further, there was no credible view of the evidence which supported the application of a mistake of fact defense.

This issue has no merit.


**V.**


The defendant argues that the trial court erred in instructing the jury regarding the elements of aggravated rape and lesser included offenses. The defendant argues the trial

15

court committed reversible error by instructing the jury it needed to find the defendant used force or coercion and caused bodily injury to the victim before convicting him of aggravated rape. The defendant also argues the trial court erred by failing to include the mens rea for sexual battery in the jury charge and by failing to instruct the jury on the lesser included offense of aggravated sexual battery.

**A.**

In criminal cases it is the duty and obligation of a trial judge, without request, to instruct the jury as to the law applicable to the evidence as well as any issue which the jury must ultimately decide. Poe v. State, 212 Tenn 413, 416, 370 S.W.2d 488, 489 (1963). See State v. Harbison, 704 S.W.2d 314, 319 (Tenn.), cert. denied, 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986); State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975); State v. Elliot, 703 S.W.2d 171, 179 (Tenn. Crim. App.), per. app. denied (Tenn. 1985). The trial judge is said to be "the proper source" from which the jury is to receive the law, and serves as a witness to the law applicable to the case. State ex rel. Myers v. Brown, 209 Tenn. 141, 148-49, 351 S.W.2d 385, 388 (1961); Ford v. State, 101 Tenn. 454, 458, 47 S.W. 703, 705 (1898).

Once the trial court has charged the jury on the law governing the case, it is the duty of the jury to apply the law, as charged, to the facts introduced into evidence. Ford v. State, supra. As our supreme court said in Ford:

> It is the duty of the jury to apply it, under the direction of the Court, so far as he has directed, to the facts in evidence. They must treat it as applicable to the facts, and apply it as they determine the facts to be. The Court is a witness to them what the law is, and the jury should adjudge it to be as given them . . . .

101 Tenn. 458, 47 S.W. at 705.

This court must now determine whether the instructions given by the trial court resulted in reversible error.

**B.**

The instruction the trial court gave the jury on the charge of aggravated rape was:

16

For you to find the defendant guilty of this crime [aggravated rape], the State must have proven beyond a reasonable doubt the existence of the following elements:

(1) that the defendant had unlawful sexual penetration of the alleged victim or the alleged victim had unlawful penetration of the defendant; and

(2) that force or coercion was used to accomplish the act; and

(3) that the defendant caused bodily injury to the alleged victim: (sic) and

(4) that the defendant acted either intentionally or knowingly.

The Tennessee Code defines aggravated rape as:

[U]nlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2) The defendant causes bodily injury to the victim;

(3) The defendant is aided or abetted by one (1) or more other persons; and

(A) Force or coercion is used to accomplish the act; or

(B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless;

(4) The victim is less than thirteen (13) years of age.

Tenn. Code Ann. § 39-13-502(a).

The instruction given to the jury by the trial court required the State of Tennessee to prove additional elements beyond a reasonable doubt before obtaining a conviction for aggravated rape. Since the instruction given by the trial court had the effect of increasing the burden on the state, no prejudice inured to the defendant. Therefore, any error committed by the trial court constituted harmless error. Tenn. R. App. 36(b) and Tenn. Crim. App. 52(a).

**C.**

In instructing the jury on the charge of sexual battery, the trial court stated the State

17

of Tennessee was required to prove:

> (1) the defendant had unlawful sexual conduct with the alleged victim or the alleged victim had unlawful sexual contact with the defendant; and

> (2) that force or coercion were [sic] used to accomplish the act.

The court defined "sexual contact" as including "the intentional touching of the alleged victim's, defendant's or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the alleged victim's -- immediate area of the allege [sic] victim's, the defendant's, or any other person's intimate parts, if the intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." The court went on to define "'intentional' conduct" or "'intentional' result" as an event that occurs "when the defendant wants to do the act or achieve the result. It is his or her conscientious objective or desire to engage in the conduct or cause the result."

Sexual battery is defined in the Tennessee Code as "unlawful sexual contact with a victim by the defendant or the defendant by a victim" accompanied by "force or coercion." Tenn. Code Ann. § 39-13-505. The statute proscribing the offense of sexual battery does not contain a culpable mental state.

Tennessee Code Annotated § 39-11-301(b) requires a culpable mental state unless the definition of the offense dispenses with a mental element. However, the statute also states "[i]f the definition of an offense within this title does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state."

In this case, the trial court defined the phrase "sexual contact," and stated the "sexual contact" requires the touching to be "intentional." Thus, the culpable mental state is contained in the jury instructions.

The defendant also contends the failure of the trial court to cross-reference the definition of "unlawful" from the jury instruction given for aggravated rape when instructing the jury on sexual battery could have confused the jury. The defendant cites State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989), as authority for this proposition. However, in Cravens the supreme court noted:

18

> In our opinion, all of the elements of each offense should be described and defined in connection with that offense, although in <u>Martin</u> we did suggest that there could be cross-referencing or repetition in connection with the lesser offenses since jury instructions in felony cases are required by statute in this state to be written and physically delivered to the jurors for use in their deliberations.

764 S.W.2d at 756.

It was not necessary to redefine the term "unlawful" because it is a word "in common use and can be understood by people of ordinary intelligence, [therefore] it is not necessary, in the absence of anything in the charge to obscure their meaning, for the court to define or explain the terms." <u>State v. Raines</u>, 882 S.W.2d 376, 383 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1994); <u>State v. Braden</u>, 867 S.W.2d 750, 761 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1993). Further, it is generally harmless error where the court simply fails to repeat a definition already given. <u>State v. Nichols</u>, 877 S.W.2d 722, 735 (Tenn. 1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); <u>State v. Wright</u>, 756 S.W.2d 669, 675 (Tenn. 1988); <u>State v. Laney</u>, 654 S.W.2d 383, 388-89 (Tenn. 1983). Taken as a whole, it is clear the charge adequately defined the crime of sexual battery.

This issue has no merit.

### D.

The defendant next contends the trial court committed error of prejudicial dimensions by failing to charge the jury on aggravated sexual battery, a Class B felony. Tenn. Code Ann. § 39-13-504. This court disagrees.

While aggravated sexual battery is a lesser included offense of aggravated rape, <u>State v. Banes</u>, 874 S.W.2d 73, 79-80 (Tenn. Crim. App. 1993), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1994); <u>State v. Edward Eugene Clark</u>, Hamilton County No. 1066, 1988 WL 90448 (Tenn. Crim. App., Knoxville, Sept. 1, 1988), the defendant was not entitled to an instruction on this lesser included offense based upon the evidence. As this court stated in <u>State v. Wright</u>, 649 S.W.2d 22, 24 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1983): "The proof clearly makes out the offense for which the defendant was convicted, and there was <u>no</u>

19

credible view of the evidence under which the defendant could have been found guilty of a lesser offense." (emphasis added). But see Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975); State v. Atkins, 681 S.W.2d 571, 577 (Tenn. Crim. App. 1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985); State v. Roy L. Sherrod, Shelby County No. 02-C-01-9510-CR-00331, 1996 WL 417661 (Tenn. Crim. App., Jackson, July 26, 1996), per. app. denied (Tenn. 1997).

In Good v. State, 69 Tenn. 293 (1878), the supreme court explained an exception to the statute requiring instructions on lesser included offenses and lesser grades of offenses:

> This is a wise statute made for the protection of the accused in all cases in which the facts may demand its application. Its purpose is to secure to the defendant the benefit of all the law applicable to the facts of his case, without any request on his part. It was not intended, however, to call from the court a charge upon hypothetical questions not suggested by proof.
>
> When it is clear that the grade of offense charged is proved, . . . to charge the law pertaining to such lesser grades would simply tend to confuse and mislead the jury, and often result in verdicts inadequate to the crime actually committed . . . .
>
> When the offense charged is beyond controversy made out and is complete, it is the duty of the court to confine its charge to such case . . . [so] that the jury may be enabled to decide intelligently the single question presented and not be mystified by abstractions.

Good, 69 Tenn. at 294-95.

In the present case there is no evidence in the record disputing sexual penetration of the victim occurred. Therefore, no jury charge on sexual battery or aggravated sexual battery was warranted.

The victim was the only person who gave testimony regarding the rape. The victim stated the defendant penetrated her three times in three different positions. The defendant refused to testify. No other evidence was introduced which disputed the victim's depiction of the events on November 18, 1995. Since no evidence was introduced disputing sexual penetration, the jury had to either believe the victim's version of the events or discredit her view entirely. The defendant would be guilty of aggravated rape, rape, or no offense. See State v. Larry Fields, Fayette County No. 11, 1991 WL 35747 (Tenn. Crim. App., Jackson, Mar. 20, 1991), per. app. denied (Tenn. July 1, 1991); State v. David H. Owen, Knox

County No. 1209, 1989 WL 54805 (Tenn. Crim. App., Knoxville, May 26, 1989), per. app. denied (Tenn. October 1, 1989). Therefore, the trial court's failure to charge the jury on the offense of aggravated sexual battery was not error and the charge given on sexual battery was superfluous.

The issue is without merit.

## VI.

The defendant contends the trial court improperly excluded evidence pursuant to Tennessee's rape shield provision, Rule 412 of the Tennessee Rules of Evidence. The defendant argues the trial court erred by ruling that the proffered testimony of three witnesses was inadmissable to show the victim's consent to the sexual actions in question. The defendant predicates this argument upon the alleged prior sexual conduct between the victim and the defendant. The defendant also argues this testimony was admissible to impeach the victim, either as prior inconsistent statements or as statements demonstrating bias or prejudice since the victim denied prior sexual conduct with the defendant. Tenn. R. Evid. 613, 616. The defendant alleges the trial court's limitations upon cross-examination and impeachment of the victim in this regard deprived the defendant of his right to confrontation and right to a fair trial.

## A.

The Tennessee Rape Shield Law, Rule 412 of the Tennessee Rules of Evidence, governs the procedure to be followed when determining the relevance of a victim's prior sexual behavior when the defendant is accused of aggravated rape, aggravated sexual battery, sexual battery, spousal sexual offenses, or the attempt to commit any such offense. Tenn. R. Evid. 412. The policy underlying the rule is the striking of "a balance between the paramount interests of the accused in a fair trial and the important interests of the sexual assault victim in avoiding an unnecessary, degrading, and embarrassing invasion of sexual privacy." Advisory Commission Comments to Tenn. R. Evid 412. The

21

portion of the rule relevant to the present case states:

> Evidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this rule, and the evidence is:
>
> (3) If the sexual behavior was with the accused, on the issue of consent . . . .

Tenn. R. Evid. 412(c)(3). Subdivision (d) of the rule provides the defendant must file a written motion to offer evidence no later than ten days before trial, except:

> the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case.

Tenn. R. Evid. 412(d)(1)(i). The motion must be accompanied by a written offer of proof. Tenn. R. Evid. 412 (d)(1)(iii). The trial court is required to hold a hearing outside the presence of the jury to determine the admissibility of the evidence. Evidence of prior sexual conduct between the victim and the accused will only be admitted into evidence if the trial court determines (a) the evidence is relevant to the issue of consent and (b) the probative value of the evidence outweighs its prejudicial effect.

## (1)

In the present case, the defendant failed to follow the requirements of Rule 412(d) because the defendant failed to file a motion for a Rule 412 hearing at least ten days prior to trial. The defendant served the State of Tennessee with a motion for a Rule 412 hearing during the trial and failed to submit a written offer of proof with the motion. The defendant failed to serve the victim with a copy of the motion until the trial court required the defendant to do so. The trial court required defense counsel to use a lunch recess for the purpose of preparing a written offer of proof which is mandated by the rule.

The trial court exercised great leniency in permitting a Rule 412 hearing. There was no indication the proffered testimony was newly discovered or the evidence could not have been obtained earlier through the exercise of due diligence. Defense counsel explained the lack of notice by stating: "I want the Court to note my objections, that the continuance

22

was denied and that I'm being left in a posture, I have not been able to comply with the Procedural Evidentiary Rules." Nevertheless, the trial court allowed a Rule 412 hearing, stating "[t]his request for a Rule 412 hearing comes late, but I exercise my discretion and grant the hearing because of the great seriousness of this particular case."

The policies behind the rape shield law require strict compliance with the procedures set forth in Tenn. R. Evid. 412(d). "[P]rior sexual behavior with others by the victim is altogether inadmissable unless there is compliance with Rule 412(d) . . . ." State v. Stephen Ray Stamps, Henry County No. 02-C-01-9301-CC-00002, 1994 WL 59451 (Tenn. Crim. App., Jackson, March 2, 1994), per. app. denied (Tenn. July 18, 1994). See State v. Gussie Willis Vann, Morgan County No. 03-C-01-9504-CR-00111, 1995 WL 548830 (Tenn. Crim. App., Knoxville, Sept. 18, 1995). Therefore, the trial court's exercise of its discretion was limited to determining whether the testimony presented in the offer of proof was newly discovered evidence or evidence which could not have been discovered beforehand with the exercise of due diligence. Tenn. R. Evid. 412(d)(1)(i). The record does not indicate whether this is what the trial judge meant when he stated he would use "his discretion."

This court will now proceed to evaluate the merits of the trial court's ruling on the proffered testimony.

**(2)**

The defendant argues the trial court erred by excluding the testimony of Brenda Dishman, the defendant's aunt, Donald Dishman, the defendant's uncle, and Timothy Nichols, the husband of the defendant's cousin, regarding prior acts of sexual conduct between the victim and the accused. It was offered to establish the victim consented to the sexual penetration. Tenn. R. Evid. 412(c)(3).

Brenda Dishman testified the victim had visited her home, but she did not know if the defendant and victim had sexual relations in her home. She was not at home when the victim visited her home. When Ms. Dishman was questioned regarding whether she had inquired if the victim had engaged in sexual relations with the defendant, she answered "No, she volunteered to told [sic] it. Because Ben was married at that time, too, she told

23

that. This particular thing." Donald Dishman testified the victim had asked him "if all the Dishmans was [sic] great lovers like Ben." Timothy Nichols testified the victim spoke with him on the phone and told him how many times she had sexual relations with the defendant and gave details about the encounters.

The trial court ruled the proffered testimony was vague and failed to demonstrate any prior sexual conduct between the defendant and the victim. The trial court stated:

> There's no evidence that this defendant ever had sex with this victim, Ms. Reed, except on November the 18th, 1995, at which time, under this evidence, she's brutally beaten in the early winter, escaped naked and ran down the street to be saved by on of her neighbors. But the issue of consent is not an issue in this case under this ruling.

The defendant contends the proffered testimony of prior sexual conduct is admissible pursuant to State v. Shockley, 585 S.W.2d 645 (Tenn. Crim. App. 1978). However, Shockley was decided before the Tennessee Rules of Evidence were adopted. Further, Shockley addressed a narrow factual scenario falling outside the rape shield law in effect at the time. The appellant in Shockley did not attempt to introduce prior sexual activity by the victim in order to demonstrate consent. The appellant sought to introduce evidence of prior sexual activity during the time in which the victim became impregnated in order to establish whether the pregnancy was caused by the rape or by other sexual activity. 585 S.W.2d at 651. The defendant in the present case does not fall within the narrow exception carved out of the rape shield laws by Shockley. Here, the defendant attempted to introduce the evidence of prior sexual activity to show consent. The situation is governed by Rule 412, not Shockley.

"The question of whether evidence is admissible rests within the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion unless clear abuse appears on the face of the record." State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994). No such clear abuse appears on the face of the record in this case. The trial court heard the defendant's offer of proof and conducted a proper analysis pursuant to the rules of evidence.

This issue is without merit.

**B.**

The defendant argues that several portions of testimony and pieces of evidence from the Rule 412 hearing should have been admitted to show bias or prior inconsistent statements. Tenn. R. Evid. 613, 616.

**(1)**

A trial judge must find that evidence is relevant before the evidence is admissible. The term "relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. In short, evidence is relevant if it tends to prove a material issue. Advisory Commission Comments to Tenn. R. Evid. 401. The Tennessee Supreme Court analyzed the competing interests between a defendant's right to confrontation and cross-examination and the need to exclude irrelevant evidence in State v. Sheline, 955 S.W.2d 42 (Tenn. 1997). The court stated:

> The United States Supreme Court has said that "the rights to confront and cross examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process," and emphasized that the denial or "significant diminution" of these rights "calls into question the ultimate integrity of the fact finding process and requires that the competing interest be closely examined."
>
> This does not mean that a defendant has a right to present irrelevant evidence. Moreover, the Supreme Court has recognized that even the right to present relevant evidence "may, in an appropriate case, bow to accommodate other legitimate interests in the criminal trial process." For instance, a trial judge has the discretion "to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'"

955 S.W.2d at 47 (citations omitted).

Rule 613 of the Tennessee Rules of Evidence permits the use of prior inconsistent statements to impeach a witness. The opposing party may interrogate the witness regarding such statements as long as the witness is "afforded an opportunity to explain or

deny the same." Tennessee Rule of Evidence 616 states "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness."

The determination of the relevance of evidence, as well as the propriety, scope, and manner of cross-examination, are left to the sound discretion of the trial judge. State v. Hutchison, 898 S.W.2d 161, 172 (Tenn. 1994), cert. denied, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); State v. Leath, 744 S.W.2d 591, 593 (Tenn. Crim. App. 1987), per. app. denied (Tenn. 1988); Gray v. State, 191 Tenn. 526, 235 S.W.2d 20 (1950). Such rulings will not be overturned on appeal absent a clear showing of an abuse of discretion. State v. Caughron, 855 S.W.2d 526, 541 (Tenn.), cert. denied, 510 U.S. 979, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993); State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995); State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App.), per. app. denied (Tenn. 1995).

**(2)**

The defendant first contends the trial court should not have excluded the testimony of Brenda Dishman that the victim stated "the best relationship she had with [the defendant] was when he was in the penitentiary" and she was "hurt" because the defendant was married. These statements are not inconsistent with prior statements made by the victim nor are they probative of bias. The victim had counseled the defendant and assisted with his progress while he was in prison. When he received parole, the victim provided him with a temporary residence. However, the defendant began drinking and smoking marijuana, thereby causing a strain on the friendship. The victim did not make a statement contradicting that she was "hurt" by the defendant's marriage because she did not testify regarding how she felt about the defendant's marriage. Further, both statements were vague and ambiguous, and were therefore not relevant to the issue of consent.

The defendant next argues it was error for the trial court to exclude a Thanksgiving card the victim sent to the defendant stating, "I'm glad you came into my life." The defendant alleges the card was admissible as a prior inconsistent statement to impeach

26

the victim's testimony that she only loved the defendant "as a parent would love a child." The notation on the Thanksgiving card does not constitute a contradictory statement and does not indicate the victim and the defendant had a romantic relationship. This piece of evidence is also irrelevant.

The defendant also argues the trial court should have admitted evidence that the victim discontinued giving money to the defendant after he was released from prison. He argues such evidence is relevant to show the victim's bias after learning the defendant married another woman. There is no indication in the record that the discontinuation of this financial support was related to the defendant's marriage. The defendant had been released from prison and was able to seek employment and provide for himself. In addition, whether the victim discontinued providing financial support to the defendant is not relevant to consent. The trial court did not err in excluding this evidence.

The defendant also sought to introduce allegations made by the victim's ex-husband during cross-examination. The victim's ex-husband alleged she "was in love with an inmate" in divorce documents. This statement is vague, nonprobative and irrelevant. The allegation did not specify any particular individual the victim allegedly loved. It is also hearsay. This evidence was properly excluded.

The defendant argues that statements made by the victim's ex-husband to the effect the victim had depleted marital assets by incurring large phone bills should have been admitted into evidence. Such statements are not relevant to the issue of whether the victim consented to sexual intercourse with the defendant. They were not admissible to impeach the victim. She admitted she accepted collect phone calls from the defendant. The allegations did not sufficiently demonstrate bias.

Finally, the defendant contends the trial court should have permitted testimony by the defendant's uncle that he met the victim at a Hardee's restaurant. The defendant argues that such testimony would have impeached the credibility of the victim. The victim testified she did not recall meeting the defendant's uncle at the restaurant. Such testimony is completely irrelevant to the material issues of this case. The trial court did not err in excluding this testimony.

There was no abuse of discretion by the trial court in ruling on the admissibility of

27

evidence. The trial court properly limited the cross-examination of the victim. Tenn. R. Evid. 611; State v. Lewis, 803 S.W.2d 260, 262 (Tenn. Crim. App. 1990).

This issue has no merit.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
CURWOOD WITT, JUDGE