**STATE of Tennessee, Appellee,**

v.

**Thomas Gerald LANEY, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

June 27, 1983.

Bob McD. Green, Johnson City, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Robert L. Jolley, Jr., Senior Asst. Atty. Gen., Nashville, for appellee.

## OPINION

DROWOTA, Justice.

In this case, the Defendant, Thomas Gerald Laney, appeals directly to this Court his conviction of first degree murder and the sentence of death imposed by the jury. He presents six issues for our consideration. After a careful review of the entire record, we find all to be without merit. We, therefore, affirm the conviction and the sentence.

Around 10:30 p.m., October 16, 1980, Suleiman Showkeir, a Kingsport grocer, was shot four times at his home. Only moments before the shooting, he had returned home from work, and he was about to enter his house from the carport.[1] Although mortally wounded, he managed to pull himself into the kitchen of his home. His wife and twelve-year-old son attempted to call for help from a phone in their home, but they found the line dead.[2] Mrs. Showkeir drove to a nearby store to seek assistance. It was later discovered the phone lines had been cut. She returned to find the Defendant lying unconscious and face down in a pool of blood in the carport. He had been shot four times, once in the head, apparently by Showkeir, who also had a gun. Laney was wearing a clear plastic Halloween mask, and a .38 caliber revolver was found approximately six inches from his right hand. Showkeir died from internal bleeding.

While in the hospital, the Defendant stated he did not remember anything about what had happened. He insisted he had been driving around after drinking with acquaintances. The Defendant's evidence showed that at the time he entered the hospital his blood alcohol content was .15, a level described as capable of having an effect on a man from "barely discernible to almost stupor." The State introduced into evidence a knife and car keys on a key ring bearing the letters "KKK" and the phrase "member in good standing." The knife and keys had been removed from Defendant's pocket by a nurse at the hospital. The keys started the engine of a car which had been parked on a road near the Showkeir home on the night of the shooting. The fence along the highway was down near the place where the car stood. The Defendant's fingerprints were on the car. This evidence tended to negate the Defendant's insistence that he knew nothing about what had happened. And it seems the jury accepted the State's evidence as establishing a planned ambush. Bullets taken from the deceased's body and from the walls of his house bore marks like those on bullets fired from Laney's gun.

The jury, on April 10, 1981, returned a conviction of murder in the first degree on this evidence. On appeal, the Defendant does not challenge the sufficiency of the evidence to support the conviction.

The sentencing phase of the trial began on April 11, 1981. At the hearing, the State relied on the evidence it had presented during the guilt phase of the trial. The Defendant introduced the testimony of Donald Jones, a professor of psychology at East Tennessee State University. The professor testified that the Defendant's overall IQ was 72, which he described as the borderline mentally retarded range. On cross-exami-

---

1. Suleiman Showkeir and his wife, Zabad, owned and operated City Grocery for 14 years. They worked six days a week and Mr. Showkeir opened the store at 8:00 a.m. and closed the store each day between 10:00 and 10:30 p.m.

2. The phone was in working order at 10:20 p.m., for Mrs. Showkeir had been talking to her sister in Lubbock, Texas.

nation, Mr. Jones stated that the Defendant was capable of planning, committing, and attempting to cover up this crime; that the Defendant met the *Graham*[3] test although his intelligence limited his ability to conform his conduct to the law; and that the circumstances under which the IQ test was taken could have had some effect on the score. The Defendant's remaining evidence tended to establish that he was a "follower," that he had difficulty in school and that he dropped out of junior high school. Dr. Wendell Skinner, of the hospital where the Defendant was treated for his gunshot wounds, testified to the Defendant's injuries. He also testified the Defendant seemed normal mentally.

At the conclusion of the evidence, the trial judge instructed the jury on all statutory aggravating and mitigating circumstances. The trial judge's instructions were taken from § 39–2404[4] of the Tennessee Code Annotated (1975). The jury returned the sentence of death by electrocution with the following finding:

> We, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances: The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb.
>
> We, the jury, unanimously find that there are no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so listed above. Therefore, we, the jury, unanimously find that the punishment for the Defendant, Thomas Gerald Laney, shall be death.

The trial court accepted the sentence and imposed it on the Defendant. The Defendant's motion for a new trial was overruled.

■ The Defendant asserts two errors committed by the trial judge during the guilt phase of his trial. The grand jury's indictment charged "Thomas Gerald Laney alias 'Hustler'" with murder in the first degree. The judge refused, on Defendant's motion, to strike the alias from the indictment. The Defendant argues the failure to prevent the State from using the alias was error because the nickname or alias was used by the State in an attempt to inflame and prejudice the jury and the alias was of no relevance to any material issue at trial. In *Mallicoat v. State,* 539 S.W.2d 54, 56 (Tenn.Cr.App.1976), the court held it error to include the word "alias" in an indictment when no proof was offered of use of an alias by the accused. That error did not warrant reversal, however. In the present case, we find no evidence presented to establish that the Defendant used an alias, and so the court should have granted the motion to strike. But the Defendant was not prejudiced by the alias, as the evidence presented by the State clearly establishes his guilt. The jury's verdict rests squarely within the bounds of the evidence; hence, it cannot reasonably be argued the jury was inflamed. Moreover, we note the Defendant's motion to strike came after the entire jury was impaneled and after the jury was aware of the alias. We think the motion was late.

■ The Defendant argues the trial court erred in admitting the key ring bearing the letters "KKK" into evidence. He asserts the effect of the inference of the Ku Klux Klan membership was to prejudice the jury. We cannot agree. The keys were probative in showing the plan of the Defendant. They, of course, were necessary to link the Defendant with the waiting car. And in this connection, the State's theory of robbery was strengthened, and the Defendant's defenses of intoxication and lack of mental capacity were weakened. The probative value of the keys outweighed any prejudicial effect. From our review of the

**3.** *Graham v. State,* 547 S.W.2d 531 (Tenn. 1977).

**4.** Now, T.C.A. § 39–2–203 (1982).

record, it appears the inscriptions on the key ring were called to the attention of the jury by defense counsel during his closing argument. Before that time, the jury had no cause to know of the inscriptions on the ring, as the State did not mention it, and it does not appear that the keys were passed among the jurors. So any prejudice in the minds of the jurors was created by the Defendant himself.

■ The Defendant's remaining arguments concern the sentencing phase of his trial. He points out the State relied upon the same evidence during the sentencing hearing as it relied upon during the guilt phase. At the sentencing hearing, the State used the evidence establishing robbery to show an aggravating circumstance for a sentence of death. The Defendant argues that since this evidence was relied upon during the guilt phase of the trial to establish murder in the first degree, and since, in the absence of the felony murder evidence at the guilt phase, Defendant would have been guilty of no more than second degree murder,[5] this evidence cannot show aggravating circumstances as it is not "additional" evidence.

We recently rejected this argument in *State v. Pritchett,* 621 S.W.2d 127, 140 (Tenn.1981). In *Pritchett,* the defendant cited this Court to a North Carolina Supreme Court case [6] in which that court held once the underlying felony had been used to obtain a conviction of first degree murder, it became an element of that crime and could not thereafter be the basis for additional prosecution or sentence. We declined to follow the reasoning of our sister state, noting that the U.S. Supreme Court, in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), implicitly approved the use of robbery, which was committed as a part of the act of murder, as a valid aggravating circumstance to support the imposition of death.[7] Our research

turns up no subsequent U.S. Supreme Court case which would require that we overrule our holding in *Pritchett.*

Second, the Defendant argues the use of felony murder as an aggravating circumstance in a charge of murder violates the Defendant's right to be free from double jeopardy. The Defendant's argument is essentially the same as that of the defendant in *Houston v. State,* 593 S.W.2d 267, 275–277 (Tenn.1980). In *Houston,* the defense asserted that T.C.A. § 39–2404 provided for an automatic sentence of life imprisonment at the conclusion of the trial on the issue of guilt. The defense argued the proceeding following the jury's finding of guilt for murder in the first degree is something other than a true sentence hearing, but is, rather, a proceeding for the enhancement of punishment or a trial for a separate and distinct crime of "aggravated first degree murder." We rejected this argument in *Houston,* stating:

> The basic fault with appellant's reasoning is that the Act does not provide for an "automatic life sentence," in any sense other than that life imprisonment is the minimum sentence for first degree murder. No sentence is imposed or can be imposed by the jury until after the "sentencing hearing." T.C.A. § 39–2404(a). The standards provided in T.C.A. § 39–2404 are not elements of the offense but establish guidelines for the exercise of the jury's discretion in determining punishment. Notice of the only aggravating circumstances which can be relied on by the state is provided in T.C.A. Section 39–2404(i). Under the holding in *Spinkellink v. Wainwright,* 578 F.2d 582, 609–610 (5th Cir.1978), *Cert. Denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796, this statutory notice is sufficient to meet the constitutional requirement of due process.

593 S.W.2d at 276. The Defendant raises no new legal arguments to show the statute

---

**5.** The indictment charged the Defendant with killing the deceased during the attempted perpetration of a robbery.

**6.** *State v. Cherry,* 298 N.C. 86, 257 S.W.2d 551 (1979).

**7.** *See also, Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

is constitutionally infirm. On the authority of *Houston,* we find the Defendant's argument lacks merit.

■ The Defendant argues that the trial judge erred in instructing the jury on eleven of the twelve statutory aggravating circumstances,[8] when the evidence supported only one. T.C.A. § 39–2404(e) provides, "[T]he trial judge shall include in his instructions for the jury to weigh and consider any mitigating circumstances and any of the statutory aggravating circumstances set forth in subsection (i) of this section which may be raised by the evidence at either the guilt or sentencing hearing, or both." The State concedes the instructions were improper but maintains they did not prejudice the Defendant's trial. We agree. In *State v. Pritchett, supra,* the trial judge charged T.C.A. § 39–2404(i)(5)[9] and § 39–2404(i)(7),[10] in its entirety, to the jury. The evidence supported only robbery as an aggravating circumstance. We held it error for the trial judge to instruct the jury on § 5, since the evidence did not support the instruction. We reversed because the jury returned a verdict on § 5, which verdict was clear error. Since the jury weighs mitigating circumstances against aggravating circumstances, we had no way of knowing and could not speculate whether the jury would have imposed the death penalty with one of the two aggravating circumstances withdrawn from its consideration. Thus, we found the court's error prejudiced the defendant's trial. Although the trial court's charging all the felonies included in § 7 was not reversible error in the absence of prejudice shown, we noted the instruction was much too broad and directed the trial court, on remand, to instruct the jury as follows:

> The murder was committed while defendant was engaged in committing, or was attempting to commit robbery. Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear.

621 S.W.2d at 140. A similar instruction should have been given in the present case, since robbery is the felony relied upon by the State. Moreover, as felony murder is the only statutory aggravating circumstance supported by the evidence and relied upon by the State, the other sections of T.C.A. § 39–2404(i) should not have been charged to the jury.

The purpose of jury instructions is to inform the jury of the law to be applied to certain facts. To charge the jurors on all possible aggravating circumstances violates this purpose. And, what is more, such a charge invites the jurors to speculate, and it creates uncertainty and confusion in their minds. The absence of proper legal guidance invites, also, a certain degree of capriciousness in the deliberation. We find no prejudice in the present case, however, because the jurors returned a verdict of felony murder, the only aggravating circumstance which the evidence supports. And, although the jury did not state specifically the felony which aggravated the murder, it is clear they intended attempted robbery as that felony. The record shows the jurors were familiar with the indictment which charged the Defendant with murder "during the attempted perpetration of a robbery..." The court defined robbery during the instructions at the guilt phase of the trial. The State, in its closing argument at the sentencing hearing, repeatedly referred to attempted robbery as the felony relied upon. From all the record, it is plainly evident the jurors were aware this case involved attempted robbery and not air-

---

**8.** T.C.A. § 39–2404(i), now T.C.A. § 39–2–203(i). The old numbering will be used throughout this opinion.

**9.** "(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind."

**10.** That section provides: "The murder was committed while the defendant was engaged in committing, or was an accomplice in committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb."

craft piracy or kidnapping or arson or any of the other irrelevant felonies in § 7.

■ While no prejudice resulted from the broad instructions given the jury, one need only review *Pritchett* and *State v. Moore,* 614 S.W.2d 348 (Tenn.1980), to see the judicial inefficiency and delay which results when prejudice is found. A new sentencing trial is required with a new jury. Since that jury is not familiar with the guilt evidence, it is possible substantial portions of that evidence will have to be presented. This takes time; it costs the State; it denies the Defendant's interest and our society's interest in having an end to the cumbersome criminal proceedings. Under our supervisory power, we direct trial courts to charge jurors narrowly, giving them guidance on the law to be applied to facts which are reasonably raised by the evidence.

■ Last, we address the Defendant's argument that, considering his low intelligence, the sentence of death is cruel and unusual. The evidence shows the Defendant possessed the mental capability to plan, commit and attempt to cover up his involvement in the crime. The evidence shows the Defendant was sane at the time of the murder, as sanity is defined by this Court in *Graham v. State,* 547 S.W.2d 531 (Tenn. 1977). This is all the law requires to hold a person accountable for his actions. Once a defendant is adjudged capable of standing trial for his offense, it is the jury's province to consider any diminished capacity as a defense to the crime or as a mitigating circumstance. T.C.A. § 39–2404(j)(8) was read to the jury, and it provides for the consideration of whether

> [t]he capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.

The jurors having been instructed, we must assume they considered any diminished capacity of the Defendant before reaching their verdict.

We have held a sentence of death is not cruel and unusual punishment in violation of the state and federal constitutions. *See Houston v. State,* 593 S.W.2d 267, 276 (Tenn.1980), *cert. denied,* 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980).

The Defendant's conviction of first degree murder and sentence of death are affirmed. The date of execution is fixed for September 27, 1983, unless stayed or otherwise ordered by this Court or other proper authority. Costs are assessed to Appellant.

FONES, C.J., and COOPER and HARBISON, JJ., concur.

BROCK, J., concurs in part and dissents in part.

BROCK, Justice, concurring in part and dissenting in part.

For the reasons stated in my dissent in *State v. Dicks,* Tenn., 615 S.W.2d 126 (1981), I would hold that the death penalty is unconstitutional; but, I concur in all other respects.